UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| EZEQUIEL TALE-TOC, | ) |
|       Plaintiff, | ) |
| v. | ) |
| JOSEPH FALVEY, in his individual capacity; and SHERIFF RANDY SMITH, in his official capacity as a public entity, | ) |
|       Defendants. | ) |

## COMPLAINT

NOW COMES Plaintiff, Ezequiel Tale-Toc, by and through undersigned counsel, who files this Complaint. In support, he states the following:

**I.   INTRODUCTION**

1. This case concerns an objectively unreasonable affidavit for arrest that was executed by defendant Joseph Falvey of the St. Tammany Parish Sheriff's Office. As a result of Mr. Falvey's objectively unreasonable affidavit, Mr. Tale-Toc was arrested for an alleged "hit and run." Because of this criminal charge, Mr. Tale-Toc then spent more than four (4) months in Immigration and Customs Enforcement ("ICE") detention.

2. However, Mr. Tale-Toc did not hit any vehicles nor did he run. There is video evidence that clearly shows that Mr. Tale-Toc did not commit any crimes. This video has been in the possession of Mr. Falvey, the Sheriff's deputy who prepared the arrest warrant during the entire investigation and arrest.

3. Unfortunately, the arrest warrant prepared by Deputy Falvey completely omits critical facts that show that Mr. Tale-Toc was not guilty of anything. Additionally, the arrest warrant also contains other facts which are simply a hallucination/fabrication.

1

4.      Under established Fifth Circuit case law, an objectively unreasonable arrest-warrant violates the Fourth Amendment as the initiation of criminal charges without probable cause may set in force events that run afoul of explicit constitutional protection.

5.      Mr. Tale-Toc sues under 42 U.S.C § 1983 against Joseph Falvey, in his individual capacity, for violation of Mr. Tale-Toc's Fourth Amendment rights. Additionally, Mr. Tale-Toc brings state law claims of malicious prosecution against Mr. Falvey and Sheriff Randy Smith, in his official capacity as a public entity.

## II.    JURISDICTION AND VENUE

6.      Mr. Tale-Toc's claims against Mr. Falvey arise under federal civil rights law. This Court has jurisdiction over Mr. Tale-Toc's claims of federal rights claim under 42 U.S.C § 1983, which is enforceable in this Court pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).

7.      This Court has supplemental jurisdiction over Mr. Tale-Toc's state law claims against Sheriff Randy Smith, in his official capacity as a public entity, as Mr. Tale-Toc's claims against Sheriff Randy Smith arise from the same operative facts as those brought against Mr. Falvey.

8.      The venue is proper in the Eastern District of Louisiana under 28 U.S.C. § 1391(b)(2). A substantial part of the events giving rise to these claims occurred in St. Tammany Parish, which is situated in the Eastern District of Louisiana.

## III.   THE PARTIES

9.      Mr. Tale-Toc is an individual residing in St. Tammany Parish, Louisiana. He is above the age of majority and is of sound mind.

10.     Mr. Falvey is an individual who, at all times relevant to this action, was a Sheriff's deputy working for Sheriff Randy Smith, which is the public entity that oversees the St. Tammany

Parish Sheriff's Office. Mr. Falvey is sued in his individual capacity for damages (punitive, actual, and nominal) and attorneys' fees/costs.

11. Sheriff Randy Smith is the public entity that oversees what is colloquially known as the St. Tammany Parish Sheriff's Office. Sheriff Randy Smith is sued in his capacity as the employer of Mr. Falvey and other relevant employees. Sheriff Randy Smith is sued solely as to state law claim for malicious prosecution.

IV. **FACTS**

12. The events at issue occurred following alleged damage to a Corvette in a Home Depot parking lot located at 48 Park Place Drive, Covington, Louisiana on Monday, September 30, 2024. All of the facts alleged in paragraphs 13-33 below are objective facts, taken from the Home Depot's security camera footage (the "Video") – the footage that Mr. Falvey had in his possession when he executed his affidavit for the warrant to arrest Mr. Tale-Toc.

13. In the morning of September 30th, Mr. Michael Bodron, the owner of a gray Covette, arrived at the Home Depot.

14. Mr. Bodron parked his Corvette near the front of the Home Depot and entered the Home Depot.

15. Multiple cars pulled in and out of the parking space adjacent to the driver's side of Mr. Bodron's Corvette.

16. At approximately 42 minutes and 40 seconds into the Video, Mr. Bodron walked back to his Corvette with his shopping cart.

17. Mr. Bodron stared at the driver's side corner bumper of his Corvette.

18. Mr. Bodron leaned over and appeared to take a photograph of his Corvette with his phone.

19. Thus, as of 42:50 in the Video, it was clear that the damage to Mr. Bodron's

3

Corvette had occurred prior to the 42:50 mark of the Video - **BEFORE** Mr. Tale-Toc even arrived at the Home Depot.

20. Mr. Bodron then loaded some items into his vehicle and went back into the Home Depot.

21. The whole time Mr. Bodron inspected his Corvette, took photos, and loaded items in his Corvette, a black sedan was parked directly adjacent on the driver's side of the Corvette.

22. Approximately seven minutes later, the black sedan departed the space adjacent to the driver's side of Mr. Bodron's Corvette.

23. The space remained empty for a few minutes.

24. Then, at approximately 51:30 into the Video, Mr. Tale-Toc arrived in his black truck and parked in the space adjacent to the driver's side of Mr. Bodron's Corvette

25. Mr. Tale-Toc exited his truck and entered the Home Depot.

26. Around 55:50 into the Video, Mr. Bodron enters the frame and walked back to his Corvette.

27. Again, Mr. Bodron looked at his front diver's side bumper of his Corvette.

28. Mr. Bodron then milled around the front of his Corvette.

29. At 57:30 into the video, Mr. Tale-Toc arrived back at his black truck.

30. Mr. Tale-Toc then loaded something into the bed of his truck.

31. Mr. Bodron made no attempt to approach Mr. Tale-Toc. Mr. Bodron made no attempt to stop Mr. Tale-Toc from leaving.

32. Mr. Tale-Toc pulled out of the parking space and drove away.

33. Mr. Tale-Toc never struck Mr. Bodron's Corvette.

34. Eventually, Defendant Falvey arrived at the scene and began to investigate and

4

spoke with Mr. Bodron.

35. Defendant Falvey spoke with the loss prevention manager for Home Depot and obtained the Video, which depicts the facts alleged in Paragraphs 13-33 above.

36. Defendant Falvey determined that Mr. Tale-Toc's truck was owned by his fiancée. Defendant Falvey accurately described Mr. Tale-Toc's build from the Video and compared Mr. Tale-Toc's build to Facebook photos. From there, Defendant Falvey determined that Mr. Tale-Toc was the individual who exited the black truck and entered the Home Depot.

37. Defendant Falvey attempted to speak with Mr. Tale-Toc at home and via phone but never made contact with Mr. Tale-Toc.

38. Despite never speaking with Mr. Tale-Toc, Defendant Falvey swore out an Affidavit for Arrest Warrant.

39. The Affidavit for Arrest Warrant contains (1) a material omission, (2) a misstatement, (3) and a complete hallucination/fabrication.

40. The Affidavit for Arrest Warrant does not state that, at approximately 42:40 into the Video, Mr. Bodron walked back to his vehicle, stared at the driver side corner bumper of his Corvette, leaned over and took a photograph using his phone.

41. Had the Affidavit for Arrest Warrant stated that there was video evidence that the damage to the vehicle was clearly observed by Mr. Bodron **BEFORE** Mr. Tale-Toc even arrived at the Home Depot, there would have been no probable cause to arrest Mr. Tale-Toc.

42. Additionally, the Affidavit for Arrest Warrant completely misstated the number and sequence of vehicles that were parked next to Mr. Bodron's Corvette. The Affidavit for Arrest Warrant claims that "three vehicles entered and exited the parking space along the driver side of the vehicle." The Affidavit for Arrest Warrant claims that the second vehicle was a "white sedan"

5

and that the third vehicle was Mr. Tale-Toc's black truck.

43. That is simply false.

44. The sequence of vehicles as evidenced on the Video was as follows: (1) a grey truck; (2) a red truck; (3) a large white pickup truck pulled through the parking space; (4) a black sedan (present when Mr. Bordron discovered the damage to his vehicle); and (5) Mr. Tale-Tock's black truck.

45. A "white sedan" was never parked next to the driver's side of Mr. Bodron's vehicle.

46. Defendant Falvey's narrative was a hallucination/fabrication.

47. The large number of vehicles that pulled in and out of the space directly adjacent to the driver's side of Mr. Bordron's Corvette indicates that any of the four preceding vehicles could have caused the damage to Mr. Bodron's Corvette.

48. The misstatement regarding the number and sequence of vehicles, though potentially insufficient by itself to negate probable cause, becomes significant when considered in conjunction with Defendant Falvey's failure to disclose that Mr. Bodron had examined the damage to the bumper *before* Mr. Tale-Toc ever arrived at the Home Depot. These combined omissions and misrepresentations of material facts demonstrate such a reckless disregard for the truth that no reasonable officer could have concluded that probable cause existed to arrest Mr. Tale-Toc.

49. No reasonable officer would have presented Mr. Falvey's affidavit to a judge given the omissions and misrepresentations.

50. Mr. Falvey presented the false and faulty affidavit to a judge and secured a warrant for Mr. Tale-Toc's arrest.

51. As a result of this misdemeanor criminal charge, Mr. Tale-Toc was arrested for "hit and run."

52. Because of the pending criminal charge, the Department of Homeland Security, ICE, requested that Mr. Tale-Toc be held in immigration custody.

53. As such, Mr. Tale-Toc was held in custody from January 12, 2025 through May 21, 2025. Thus, he was detained due to Defendants' misconduct for more than four months.

54. Mr. Tale-Toc retained criminal defense counsel, and his attorney reviewed the Video.

55. Mr. Tale-Toc's criminal defense counsel presented screenshots of the instance where, at approximately 42:40 into the Video, Mr. Bodron walked back to his Corvette, stared at his driver's side corner bumper, and leaned over and appeared to take a photograph of the Corvette using his phone.

56. Based on this obviously exculpatory evidence—which was in the possession of Mr. Falvey—the criminal charges against Mr. Tale-Toc were dismissed.

57. Eventually, given the dismissal of the criminal charges, an immigration judge ordered that Mr. Tale-Toc be released from ICE custody.

58. In sum, Mr. Tale-Toc spent more than four months in detention because Mr. Falvey presented a false and faulty affidavit to a judge.

59. By and through the above, Mr. Falvey made false statements knowingly and intentionally, or with reckless disregard for the truth.

60. A corrected affidavit would not show probable cause to arrest Mr. Tale-Toc. That is, if the material omissions and false statements were corrected, the affidavit would not have been sufficient to provide probable cause for the arrest of Mr. Tale-Toc.

61. Mr. Falvey either knew or should have known that these material omissions and false statements could lead to an arrest of Mr. Tale-Toc without probable cause.

62. The charge and incarceration took a significant emotional toll on Mr. Tale-Toc's mental health. Mr. Tale-Toc now suffers from anxiety and emotional distress.

63. Mr. Tale-Toc lost out on opportunity to earn income during his detention.

64. Mr. Tale-Toc was separated from his wife and two children during his detention.

65. Mr. Tale-Toc's children suffered depression, anxiety, and behavioral problems due to Mr. Tale-Toc's absence. The suffering of his children negatively impacted Mr. Tale-Toc.

66. Upon information and belief, the damages suffered by Mr. Tale-Toc include, but are not limited to, past and future emotional distress, anxiety, fear, wrongful incarceration/detention, loss of freedom of movement, invasion of privacy, reduction of character, lost employment earnings, and loss of liberty and reduced employment potential.

67. Sheriff Randy Smith was the employer of Mr. Falvey at all times relevant to this action. Mr. Falvey's conduct itemized above was committed in the course and scope of his employment with Sheriff Randy Smith.

V. **CLAIMS FOR RELIEF**

**Claim I: Violation of the Mr. Tale-Toc's Fourth Amendment Rights
Enforced Through 42 U.S.C § 1983
(Solely as to Defendant Falvey)**

68. Mr. Tale-Toc realleges and incorporates the above paragraphs.

69. The Fifth Circuit has held that "[t]he initiation of criminal charges without probable cause may set in force events that run afoul of explicit constitutional protection—the Fourth Amendment if the accused is seized and arrested, for example." *Castellano v. Fragozo*, 352 F.3d 939, 945, 953 (5th Cir. 2003) (en banc).

70. Here, as is discussed and detailed above, Mr. Falvey instituted criminal charges against Mr. Tale-Toc without probable cause.

71. Based on the materially misleading affidavit, Mr. Tale-Toc was arrested for hit and run.

72. By and through the above, Mr. Falvey made false statements knowingly and intentionally, or with reckless disregard for the truth.

73. A corrected affidavit would not show probable cause to arrest Mr. Tale-Toc. That is, if the material omissions and false statements were corrected, the affidavit would not have been sufficient to provide probable cause for the arrest of Mr. Tale-Toc.

74. Mr. Falvey either knew or should have known that these material omissions and false statements could lead to an arrest of Mr. Tale-Toc without probable cause.

75. Accordingly, for the conducted detailed above, Mr. Falvey violated Mr. Tale-Toc's Fourth Amendment rights.

76. Mr. Tale-Toc's Fourth Amendment rights can be enforced through 42 U.S.C § 1983.

77. Accordingly, Mr. Tale-Toc sues Mr. Falvey under 42 U.S.C § 1983 for violation of his Fourth Amendment rights.

78. An award of punitive damages would be appropriate against Mr. Falvey. Mr. Falvey's conduct evidenced a reckless disregard of the health, safety, or rights of Mr. Tale-Toc.

79. As a relief for Mr. Falvey's violation of his rights, Mr. Tale-Toc seeks an award of damages (actual, nominal, and punitive) and attorneys' fees/costs.

### Claim II: State Law Claim for Malicious Prosecution
### (As to Both Defendants)

80. Mr. Tale-Toc realleges and incorporates the above paragraphs

81. Under Louisiana law a claim for malicious prosecution requires proof of six

9

elements: 1) the commencement or continuance of an original criminal or civil judicial proceeding; 2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; 3) its bona fide termination in favor of the present plaintiff; 4) the absence of probable cause for such proceeding; 5) the presence of malice therein; and 6) damages conforming to legal standards resulting to plaintiff. *Hibernia Nat'l Bank of New Orleans v. Bolleter*, 390 So.2d 842 (La.1980).

82. As a result of the facts set above, each of the elements of a Louisiana claim for malicious prosecution have been satisfied.

83. A plaintiff ordinarily bears the burden of proof on all the elements of the malicious prosecution action, including proving the absence of probable cause and malice. However, there is a presumption of lack of probable cause which is set forth in *Robinson v. Rhodes*, 300 So.2d 249, 251 (La.App. 2d Cir.1974), *writ refused*, 303 So.2d 178 (La.1974). Robinson firmly establishes

> "the rule that where a committing magistrate, without a trial, has discharged the accused, or the prosecuting officer has dismissed the charge, or where a grand jury has returned a no bill, there is a presumption of want of probable cause with the result that, in a suit for malicious prosecution based on that discharge, the burden of showing that he acted on probable cause and without malice is upon the defendant."

84. Here, there was a bona fide termination in favor of the present plaintiff. Thus, there is a presumption of want of probable cause and Defendants bears the burden of showing that they acted on probable cause and without malice.

85. Defendant Smith is responsible for any/all wrongful conduct committed by its employees pursuant to the doctrine of *respondeat superior*.

86. As relief for Defendants' violation of his right to be free from malicious prosecution, Mr. Tale-Toc seeks an award of compensatory/actual damages and costs.

## VI. <u>DEMAND FOR JURY TRIAL</u>

87. Mr. Tale-Toc demands trial by jury on all issues.

## V. <u>RELIEF REQUESTED</u>

88. Wherefore Mr. Tale-Toc requests judgment be entered against Defendants and that the Court:

  a. Award damages (compensatory, nominal, and punitive) against Defendant Falvey 42 U.S.C § 1983 for violation of Mr. Tale-Toc's Fourth Amendment rights.

  a. Award actual/compensatory damages and costs against Defendants under Mr. Tale-Toc's state law claims of malicious prosecution;

  b. Award costs and attorney's fees pursuant to 42 U.S.C § 1983 and its attendant attorneys' fees/costs provisions;

  c. Order such other and further relief, at law or in equity, to which Mr. Tale-Toc may be justly entitled.

Respectfully submitted, this Wednesday, October 29, 2025

/s/ Garret S. DeReus

BIZER & DEREUS, LLC
Garret S. DeReus (LA # 35105)
gdereus@bizerlaw.com
Andrew D. Bizer (LA # 30396)
andrew@bizerlaw.com
Eva M. Kalikoff (LA # 39932)
eva@bizerlaw.com
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996

***AND***

                                                Justin Marquez (LA # 26400)
                                                Marquez Law Firm
                                                1515 Tchoupitoulas St.
                                                New Orleans, LA 70130
                                                985-317-4720
                                                justinmarquezlaw@gmail.com