**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**EZEQUIEL TALE-TOC**                                  **CIVIL ACTION**

**VERSUS**                                             **NO: 25-2214**

**JOSEPH FALVEY, ET AL**                               **SECTION "H"**

## ORDER AND REASONS

Before the Court is a Motion to Dismiss (Doc. 17) filed by Defendants Sheriff Randy Smith, in his official capacity, and Joseph Falvey, in his individual capacity. For the following reasons, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

This matter arises out of a hit-and-run accident in a Home Depot parking lot and the subsequent arrest and detainment of Plaintiff Ezequiel Tale-Toc. Plaintiff alleges the following facts in his Amended Complaint while referring to an hour-long surveillance video of the store's parking lot.[1]

On September 30, 2024, Michael Bodron ("Bodron") parked his gray Chevrolet Corvette in the parking lot of a Home Depot store in Covington, Louisiana.[2] Bodron entered the store, and, while he was inside, multiple vehicles pulled in and out of the spot next to the Bodron's driver side. At

---

[1] Doc. 12.
[2] Bodron is not a party to this action.

1

approximately the 42:40-minute mark, Bodron returned to his vehicle, noticed damage to his front driver's side bumper, "leaned over[,] and appeared to take a photograph with his phone."[3] Bodron then loaded items into his vehicle and went back inside the store. Approximately eight minutes after Bodron reentered the store, Plaintiff parked a black truck in the spot next to Bodron's driver side and entered the store. A few minutes later, Bodron returned to his Corvette, remaining outside of the vehicle. Plaintiff then returned to his truck, loaded something into its bed, and drove away, without damaging Bodron's Corvette. Although Bodron was still standing outside his vehicle, Bodron never spoke to or interacted with Plaintiff. Sometime later, Defendant Deputy Joseph Falvey ("Falvey") of the St. Tammany Parish Sheriff's Office ("STPSO") arrived at the scene to investigate the damage to Bodron's vehicle. Falvey spoke with the store's loss prevention manager and obtained an hour-long video of the parking lot, beginning when Bodron pulled into his parking space. Using the video and photos obtained from Facebook, Falvey determined that Plaintiff parked and exited the black truck, a Toyota Tundra owned by his fiancée, and entered the store around the video's 51:30-minute mark. Falvey attempted to speak with Plaintiff by phone and at his home but was unable to contact him. Falvey then submitted an Affidavit for Arrest Warrant ("Affidavit") that (1) omitted the fact that Bodron first noticed and took a photo of the damage to his vehicle before Plaintiff arrived at the scene and (2) misstated the number and sequence of vehicles that were parked in the spot next to Bodron's driver side during the video. Using the faulty Affidavit, Falvey sought and procured a warrant for Plaintiff's arrest. Plaintiff was arrested on a misdemeanor hit-and-run charge, and because of that pending charge, the

---

[3] Doc. 12 at 3.

Department of Homeland Security, Immigration and Customs Enforcement ("ICE") requested to place Plaintiff in its custody. Plaintiff was held in ICE custody for more than four months, but the criminal charges were ultimately dismissed when the "State Nolle Prossed said matter due to proof of factual innocence of the crime."[4] Following the dismissal of his criminal charges, Plaintiff was released from ICE custody.

Plaintiff brings a claim under 42 U.S.C. § 1983 against Falvey in his individual capacity for unlawful arrest in violation of Plaintiff's Fourth Amendment rights and a state law claim for malicious prosecution against Falvey and Randy Smith ("Sheriff Smith") in his official capacity as Sheriff of the STPSO. On December 22, 2025, Defendants moved to dismiss Plaintiff's original Complaint.[5] Plaintiff timely amended his Complaint pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), and the Court denied Defendants' Motion as moot. Defendants now move to dismiss Plaintiff's Amended Complaint for failure to state a claim. In support of their Motion, Defendants submit a Crash Report, the Arrest Warrant and Affidavit, the hour-long surveillance video of the parking lot, the report detailing Plaintiff's arrest, ICE's Immigration Detainer, and a copy of Plaintiff's criminal history. For the reasons stated below, the Court excludes the Crash Report, the report detailing Plaintiff's arrest, the Immigration Detainer, and the copy of Plaintiff's criminal history for the purposes of the instant Motion.[6]

---

[4] *Id.* at 7 (purportedly quoting the state court's minute entry from an April 24, 2025 hearing).
[5] Doc. 10.
[6] *See* FED. R. CIV. P. 12(d).

3

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim for relief that is plausible on its face."[7] A claim is "plausible on its face" when the pleaded facts allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[8] A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor."[9] The court need not, however, accept as true legal conclusions couched as factual allegations.[10] To be legally sufficient, a complaint must establish more than a "sheer possibility" that the plaintiff's claims are true.[11] "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" will not suffice.[12] If it is apparent from the face of the complaint that an insurmountable bar to relief exists and the plaintiff is not entitled to relief, the court must dismiss the claim.[13] The court's review is limited to the complaint and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.[14]

## LAW AND ANALYSIS

Because the parties have attached matters outside the pleadings, the Court must first consider whether to exclude the matters or to consider the

---

[7] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007)).

[8] *Id.*

[9] Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232 (5th Cir. 2009).

[10] *Iqbal*, 556 U.S. at 678.

[11] *Id.*

[12] *Id.*

[13] *Lormand*, 565 F.3d at 255–57.

[14] Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498–99 (5th Cir. 2000).

Motion as one for summary judgment. A court may, at its discretion, exclude matters presented that are outside of the pleadings; however, if the court does not exclude these matters, it must treat the motion as one for summary judgment under Rule 56.[15] As a narrow exception, a court may treat documents attached to a motion to dismiss as a part of the pleadings without converting the motion into one for summary judgment if the complaint refers to the documents, and the documents are central to the plaintiff's claim.[16] The Arrest Warrant, which attaches Falvey's Affidavit in support of his application for the arrest warrant, and the surveillance video, identified as Exhibits 2 and 3 to the instant Motion, fall into this exception because both are referred to in Plaintiff's Amended Complaint and are central to Plaintiff's claims.[17] The remaining Exhibits—the Crash Report, the report detailing Plaintiff's arrest, the Immigration Detainer, and the copy of Plaintiff's criminal history—do not assist the Court in resolving this matter on the merits, where little, if any, discovery has been conducted.[18] The Court thus uses its "complete discretion"

---

[15] FED. R. CIV. P. 12(d).

[16] Causey v. Sewell Cadillac-Chevrolet, Inc., 394 F.3d 285, 288 (5th Cir. 2004) (citing *Collins*, 224 F.3d at 498–99).

[17] "The Fifth Circuit has not articulated a specific test to determine when an exhibit is central to a plaintiff's claims, but 'case law does suggest . . . that a document satisfies the centrality component when it is necessary to establish an element of one of the plaintiff's claims.'" Truong v. Magnolia Fleet, LLC, 724 F. Supp. 3d 568, 574 (E.D. La. 2024) (quoting Antero Res. Corp. v. C&R Downhole Drilling, No. 16-CV-668, 2019 WL 13193898, at *2 (N.D. Tex. July 22, 2019)).

[18] The Court notes that Defendants did not ask the Court to convert this Motion to one for summary judgment or argue that these documents could be considered under Rule 12(b)(6). Conversely, Defendants did ask the Court to consider the Affidavit and surveillance video, arguing that they were referred to in the Amended Complaint and were central to Plaintiff's claims.

to exclude these attachments and will analyze this Motion under the applicable Rule 12(b)(6) standard.[19]

Turning to the merits of the instant Motion, Defendants assert that Plaintiff has failed to state a valid Fourth Amendment claim for unlawful arrest and that Plaintiff's allegations are insufficient to overcome the independent intermediary doctrine or qualified immunity. As to Plaintiff's state law malicious prosecution claim, Defendants maintain that Plaintiff failed to allege sufficient facts to support malicious intent or justify a claim against Sheriff Smith. Defendants also invoke immunity under Louisiana law, contest Plaintiff's request for punitive damages, and argue that Plaintiff cannot show a causal connection between his claims and his ICE detention. Plaintiff opposes. The Court considers each of Defendants' arguments in turn.

### A. Unlawful Arrest Claim

Defendants contend that Plaintiff has failed to adequately plead an unlawful arrest claim where (1) Plaintiff was arrested pursuant to a warrant supported by probable cause; (2) Plaintiff fails to allege that any purported misstatement or omission in Falvey's application for a warrant was material to a finding of probable cause; and (3) Plaintiff failed to demonstrate that Falvey acted in an objectively unreasonable manner. Defendants further argue that Plaintiff fails to allege facts sufficient to overcome the independent intermediary doctrine.

Plaintiff's claims for unlawful arrest are based on both *Malley* and *Franks* liability. Pursuant to *Malley v. Briggs*, "an officer can be held liable for

---

[19] *See* General Retail Services, Inc. v. Wireless Toyz Franchise, LLC, 255 F. App'x 775, 783 (5th Cir. 2007) ("It is well known that when 'matters outside the pleading' are presented with a motion to dismiss under Rule 12(b)(6), a district court has complete discretion to either accept or exclude the evidence.").

a false arrest despite the issuance of an arrest warrant by a magistrate if the affidavit the officer presented to the magistrate was 'so lacking in indicia of probable cause as to render official belief in its existence unreasonable.'"[20] "The *Malley* wrong is not the presentment of false evidence, but the obvious failure of accurately presented evidence to support the probable cause required for the issuance of a warrant."[21] Conversely, under *Franks v. Delaware*, an official violates the Fourth Amendment when the official makes materially false statements—either deliberately or with reckless disregard for the truth—in support of a warrant that are necessary to a court's finding of probable cause.[22] The Fifth Circuit has extended the applicability of *Franks* beyond affirmatively false statements to material omissions.[23] Under *Franks*, a court must consider whether an official's statements or omissions were "necessary to [a] finding of probable cause."[24]

While ordinarily, a Plaintiff may plead alternative theories of liability,[25] *Franks* and *Malley* claims are mutually exclusive in that "a warrant affidavit that facially lacks probable cause can't trigger the *Franks* analysis," and instead "must be assessed under *Malley*."[26] Accordingly, to determine whether

---

[20] Wilson v. Stroman, 33 F.4th 202, 206 (5th Cir. 2022) (quoting Malley v. Briggs, 475 U.S. 335, 344–45 (1986)).

[21] *Id.* (citing Melton v. Phillips, 875 F. 3d 256, 264 (5th Cir. 2017)).

[22] Franks v. Delaware, 438 U.S. 154, 155–56 (1978).

[23] Michalik v. Hermann, 422 F.3d 252, 258 n.5 (5th Cir. 2005) ("The Fifth Circuit has interpreted *Franks* liability to also include liability for an officer who makes knowing and intentional *omissions* that result in a warrant being issued without probable cause.") (emphasis in original).

[24] *Franks*, 438 U.S. at 156.

[25] FED. R. CIV. P. 8(a)(3).

[26] Terwilliger v. Reyna, 4 F.4th 270, 286 (5th Cir. 2021) (Higginson, J. concurring) (citing Blake v. Lambert, 921 F.3d 215, 222 (5th Cir. 2019)). "That is because if a warrant affidavit lacks probable cause on its face, any included false statement or omission can't be material to the existence of probable cause." *Id.* (citing Kohler v. Englade, 470 F.3d 1104, 1113 (5th

Plaintiff has pleaded a viable *Franks* or *Malley* claim, the Court must first determine whether the Falvey's Affidavit facially lacked probable cause.[27]

### a. Probable Cause

"Probable cause exists when all of the facts known by a police officer 'are sufficient for a reasonable person to conclude that the suspect had committed, or was in the process of committing, an offense.'"[28] "The test for probable cause is not reducible to 'precise definition or quantification.'"[29] Courts must examine the totality of the circumstances to decide "whether there is a fair probability that a crime occurred."[30] A "requisite 'fair probability' is something more than a bare suspicion, but need not reach the fifty percent mark."[31] Importantly, "evidence that the arrestee was innocent of the crime is not necessarily dispositive of whether the officer had probable cause to conduct the arrest because 'probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.'"[32]

Reviewing only the allegations in Falvey's Affidavit and assuming, as one must, that those allegations are true, probable cause existed for Plaintiff's arrest. Falvey's Affidavit reads as follows:

---

Cir. 2006) ("Th[e] materiality analysis presumes that the warrant affidavit, on its face, supports a finding of probable cause.")).

[27] "The question of probable cause is a mixed question of law and of fact. Whether the circumstances alleged to show it probable are true, and existed, is a matter of fact; but whether, supposing them to be true, they amount to a probable cause, is a question of law." Munajj v. City of Fredericksburg, No. 25-50535, 2026 WL 897005, at *2 n.1 (5th Cir. Apr. 1, 2026) (quoting Reitz v. Woods, 85 F.4th 780, 788 (5th Cir. 2023)).

[28] Villarreal v. City of Laredo, 17 F.4th 532, 543 (5th Cir. 2021) (quoting Texas v. Kleinert, 855 F.3d 305, 316 (5th Cir. 2017)).

[29] Florida v. Harris, 568 U.S. 237, 243 (2013) (quoting Maryland v. Pringle, 540 U.S. 366, 371 (2003)).

[30] United States v. Garcia, 179 F.3d 265, 269 (5th Cir. 1999) (citation modified).

[31] *Id.*

[32] Deville v. Marcantel, 567 F.3d 156, 165 (5th Cir. 2009) (quoting Illinois v. Gates, 462 U.S. 213, 244 n.13 (1983)).

I, Joseph Falvey, with the St Tammany Parish Sheriff's Office, certify under oath based on the information outlined below, that there is probable cause to believe Ezequiel Taletoc on or about the date(s) of 09-30-2024 did commit:

1 Count(s) of 14:100-- Hit and Run Driving-- (Misdemeanor)

within this state and Parish at: 40 Park Place, Covington, LA 70433 in St. Tammany Parish and the jurisdiction of the 22nd Judicial District Court, contrary to the form of the statutes of the State of Louisiana in such case made and provided, and against the peace and dignity of the same, in that the following did occur:

On Monday September 30, 2024, at or about 1048 hours, Deputy Joseph Falvey, Unit 1224, was dispatched to Home Depot, 48 Park Place Drive, Covington, LA, to investigate a Hit and Run Crash.

During the investigation deputy Falvey was able to determine a Hit and Run crash of a 1999 Chevrolet Corvette had occurred in the parking lot between 0930 and 1045 hours that day. Deputy Falvey was able to obtain camera footage from the store's loss prevention personnel. In the footage Deputy Falvey observed the Corvette parked in the parking lot, and while it was parked three vehicles entered and exited the parking spot along the driver side of the vehicle. While the second vehicle, a white sedan was parked next to the Corvette, the Corvette owner, Michael Bodron, was observed exiting the store, walking to the vehicle, and returning back into the store.

While in the store, the white sedan left, and a black Toyota Tundra Pickup truck entered the spot. The Tundra had difficulty getting into the parking spot and repositioned, before parking the vehicle, offset in the parking spot closer to the Corvette. The driver, a petite Hispanic male with medium length black hair, entered the store, and Mr. Bodron exited the store shortly thereafter. When Mr. Bodron approached his vehicle, he immediately noticed damage to the front driver side corner of his Corvette.

9

Deputy Falvey was able to utilize the Flock Automated License Plate Reader (ALPR) cameras to identify the Tundra, based off the Rigid brand toolbox and the trailer hitch attached to the rear. Deputy Falvey was able to determine the truck had Louisiana License Plate Z320464, which was registered to Valerie Alexi Ponce.

The registered address of the Tundra was 70446 2nd Street, Covington, LA and the address on the Driver's License of Ms. Ponce was 1543 Lotus Rd Ext. Mandeville, LA. Deputy Falvey made multiple attempts to locate the vehicle at both addresses, and each time was met with negative results.

Deputy Falvey placed the Tundra on the Flock ALPR Hotlist, where it was later located by Deputy Jude St. Clair, Unit 260 of the St. Tammany Parish Sheriff's Office. Deputy St. Clair completed a Field Interview Card on the driver of the Tundra, who was identified as Eziquiel Taletoc.

Deputy Falvey conducted a query via the LENSS database of Mr. Taletoc, where he was observed to be a petite (5'4" 135 lbs.) hispanic male with medium length black hair. Deputy Falvey also searched for Mr. Taletoc via Facebook where it was confirmed Mr. Taletoc was currently engaged to Valeri Alexi Ponce.

Deputy Falvey attempted to contact Mr. Taletoc via the phone number he provided to Deputy St. Clair during their interaction, however that phone number was not in service at the time contact was attempted.

Due to the above listed fact and circumstances, Eziquiel Taletoc should be placed under arrest for violation of Louisiana Revised Statute 14:100, Hit and Run Driving.[33]

Under Louisiana Revised Statute § 14:100, hit-and-run driving is defined as "the intentional failure of the driver of a vehicle involved in or causing any

---

[33] Doc. 17-3 at 2–4.

accident, to stop such vehicle at the scene of the accident, to give his identity, and to render reasonable aid."[34] Falvey's Affidavit describes that Bodron noticed the damage to his Corvette upon returning to his car for the second time—not the first—implying that the damage was caused by a vehicle that was present in the adjacent space sometime during Bodron's second trip inside. Falvey's Affidavit then states that a black Toyota Tundra "had difficulty getting into the parking spot and repositioned, before parking the vehicle, offset in the parking spot closer to the Corvette" and that Bodron returned and noticed the damage shortly thereafter.[35] Falvey's Affidavit goes on to describe how he determined that Plaintiff was driving the black Toyota Tundra in the video. Although the Affidavit does not conclusively state that Plaintiff caused the damage to the Corvette, a magistrate has authority to "draw such reasonable inferences as he will from the material supplied to him by applications for a warrant."[36] The allegations regarding the Tundra's apparent difficulty parking in the spot next to the Corvette, taken with the Tundra's physical presence at the scene when Falvey believed the damage occurred and Falvey's process of determining the driver, are sufficient to cause a reasonable person to believe that Plaintiff damaged the Corvette and left the scene in violation of Louisiana Revised Statutes § 14:100. Because the allegations in Falvey's Affidavit are facially sufficient to meet the probable cause requirement, Plaintiff's *Malley* claim fails and must be dismissed.

### b. *Franks* Liability

Having determined that Falvey's Affidavit facially demonstrates probable cause for Plaintiff's arrest, the Court considers whether Plaintiff has

---

[34] LA. REV. STAT. § 14:100(A).

[35] Doc. 17-3 at 3.

[36] *Gates*, 462 U.S. at 240.

11

stated a claim that entitles him to relief under *Franks*. Defendants argue that Plaintiff's allegations do not support a *Franks* claim. Defendants assert that Falvey did not omit any information known to him at the time he drafted his Affidavit because his interpretation of the video was reasonable. In the same vein, according to Defendants, Falvey did not make any purported omission willfully or with reckless disregard for the truth.

"Franks holds that an officer cannot avoid liability where a warrant affidavit (1) contains false statements or material omissions (2) made with at least 'reckless disregard for the truth' that (3) were 'necessary to the finding of probable cause.'"[37] Under *Franks*, to assess whether allegedly false statements and omissions were necessary to a finding of probable cause, a court must "consider the faulty affidavit as if those errors and omissions were removed."[38] A court must then "examine the 'corrected affidavit' and determine whether probable cause for the issuance of the warrant survives the deleted false statements and material omissions."[39]

> At the motion to dismiss stage, plaintiffs need only point out specifically the portion of the warrant affidavit that is claimed to be false . . . accompanied by a statement of supporting reasons. By pleading such facts, plaintiffs meet their burden of alleging a *Franks* violation sufficient to withstand the test of *Iqbal/Twombly*, but if they press the litigation, they must offer tangible proof to overcome the presumption of validity with respect to the affidavit supporting the warrant. Thus, specific examples of misstatements and omissions—combined with inferential explanation as to their materiality—can carry a complaint across the Rule 12(b)(6) line.[40]

---

[37] Hughes v. Garcia, 100 F.4th 611, 619 (5th Cir. 2024) (quoting *Franks*, 438 U.S. at 155–56).
[38] Winfrey v. Rogers, 901 F.3d 483, 494–95 (5th Cir. 2018).
[39] *Id.* at 495.
[40] *Hughes*, 100 F.4th at 620 (citation modified).

12

Accepting Plaintiff's allegations as true, Falvey's Affidavit was faulty in that Falvey: (1) omitted that Bodron walked back to his vehicle at approximately the 42:40-minute mark, stared at his bumper, leaned over and took a photograph using his phone; and (2) misstated the number and sequence of vehicles that were parked on the driver side of the Corvette.[41] If these defects are removed, the remaining pertinent allegations are as follows:

> In the footage Deputy Falvey observed the Corvette parked in the parking lot, and while it was parked five vehicles entered and exited the parking spot along the driver side of the vehicle. The vehicles are as follows: (1) a grey truck; (2) a red truck; (3) a white pickup truck; (4) a black sedan; and (5) a black truck.[42] While the fourth vehicle, a black sedan, was parked next to the Corvette, the Corvette owner, Michael Bodron, was observed exiting the store at approximately 42 minutes and 40 seconds into the video. Mr. Bodron walked to the vehicle, stared at the driver side corner bumper of his Corvette, leaned over and took a photograph using his phone.[43] Bodron then went back into the store.
>
> While in the store for the second time, the black sedan left, and a black Toyota Tundra Pickup truck entered the spot. The Tundra had difficulty getting into the parking spot and repositioned, before parking the vehicle, offset in the parking spot closer to the Corvette. The driver, a petite Hispanic male with medium length black hair, entered the store, and Mr. Bodron exited the store

---

[41] "When there is video evidence in the record, courts are not bound to accept the nonmovant's version of the facts if it is contradicted by the video." Crane v. City of Arlington, 50 F.4th 453, 461–62 (5th Cir. 2022) (citing Harris v. Serpas, 745 F. 3d 767, 771 (5th Cir. 2014)), *abrogated on other grounds* by Tuttle v. Gallegos, 180 F.4th 209 (5th Cir. 2026). However, "a court should not discount the nonmoving party's story unless the video evidence provides so much clarity that a reasonable jury could not believe his account." *Id.* (quoting Darden v. City of Fort Worth, 880 F.3d 722, at 730 (5th Cir. 2018)). Because a reasonable jury could view the video and conclude—as the Court in fact does—that Bodron clearly noticed the damage to his vehicle the first time he returned to his vehicle at the 42:40-minute mark, Plaintiff's allegations are not clearly contradicted by the surveillance video. Accordingly, this Court will accept Plaintiff's allegation as true for the purposes of the instant Motion.

[42] Doc. 12 at 6.

[43] *Id.* at 5.

13

shortly thereafter. When Mr. Bodron approached his vehicle for the second time, he again observed the damage to the front driver side corner of his Corvette.

Considering only the remaining allegations, Falvey's Affidavit does not present sufficient content to support a finding of probable cause. The corrected Affidavit indicates that the damage to the Corvette occurred at some point before Plaintiff arrived, meaning he could not have damaged Bodron's Corvette. Therefore, the alleged errors and omissions were necessary to a finding of probable cause.

Turning to whether the defects in the Affidavit were made with the requisite intent, Plaintiff also satisfies his burden. Plaintiff's Amended Complaint alleges that "Falvey's narrative was a hallucination/fabrication," and that the "combined omissions and misrepresentations of material facts demonstrate such a reckless disregard for the truth that no reasonable officer could have concluded that probable cause existed to arrest [Plaintiff]."[44] Plaintiff further alleges that by ignoring "*obviously* exculpatory evidence," "Falvey made false statements knowingly and intentionally, or with reckless disregard for the truth."[45] Assuming—again, as one must for the instant Motion—that the video conclusively shows that Bodron noticed the damage before Plaintiff arrived on the scene, Falvey acted "contrary to the information provided to him" and "generated the basic facts set out in the probable cause affidavit."[46] "Any reasonable officer would have known, based on the evidence available, that the affidavit contained [material] errors."[47] Accordingly, Plaintiff has stated a viable claim for false arrest based on a *Franks* violation.

---

[44] *Id.* at 6.
[45] *Id.* at 7 (emphasis added).
[46] *Terwilliger*, 4 F.4th at 284.
[47] *Hughes*, 100 F.4th at 623 (citing *Terwilliger*, 4 F.4th at 284).

### c. Independent Intermediary Doctrine

Defendants next argue that because Falvey's application for Plaintiff's arrest was reviewed and approved by a magistrate, the magistrate's decision breaks the chain of causation for Plaintiff's unlawful arrest claim under the independent intermediary doctrine. The independent intermediary doctrine "provides that 'if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party.'"[48] "However, the chain of causation remains intact if 'it can be shown that the deliberations of that intermediary were in some way tainted by the actions of the defendant.'"[49] The Fifth Circuit recognizes both *Franks* and *Malley* claims "as functional exceptions to the independent intermediary doctrine."[50] "Thus, if a Plaintiff adequately pleads that an officer has obtained an arrest warrant from a magistrate in violation of *Malley* or *Franks*, then nothing more is required to show that the independent intermediary doctrine does not apply with respect to that intermediary's decision."[51] As set forth above, Plaintiff has adequately pleaded a *Franks* violation, meaning the independent intermediary doctrine does not apply here.

### d. Qualified Immunity

Similarly, Defendants' argument that they are entitled to qualified immunity also fails. "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional

---

[48] *Terwilliger*, 4 F.4th at 281 (quoting Cuadra v. Houston Indep. Sch. Dist., 626 F.3d 808, 813 (5th Cir. 2010)).

[49] *Cuadra*, 626 F.3d at 813 (quoting Hand v. Gary, 838 F.2d 1420, 1428 (5th Cir. 1988)).

[50] Wilson v. Stroman, 33 F.4th 202, 208 (5th Cir. 2022) (collecting cases).

[51] *Id.* (citing Mayfield v. Currie, 976 F.3d 482, 487 (5th Cir. 2020)).

right that was clearly established at the time of the challenged conduct."[52] "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'"[53] The Supreme Court does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."[54] The Court has instructed lower courts "not to define clearly established law at a high level of generality."[55]

Defendants argue that Plaintiff has failed to plead a violation of a clearly established constitutional right in that Falvey's Affidavit merely "provides a different version/interpretation of events in a video from the Plaintiff's own self-serving version of events."[56] Defendants are correct that law enforcement officials may interpret evidence and detail their reasonable conclusions in a warrant application without violating *Franks*,[57] but, because the surveillance video does not clearly contradict Plaintiff's version of events, all factual ambiguities must be resolved in Plaintiff's favor at the motion to dismiss stage.[58] As held above, Plaintiff has adequately pleaded a claim for false arrest under *Franks*. The commission of a *Franks* violation is a clearly established

---

[52] Heaney v. Roberts, 846 F.3d 795, 801 (5th Cir. 2017) (quoting Reichle v. Howards, 566 U.S. 658, 664 (2012)).

[53] Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (alteration in original) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

[54] *Id.* at 741.

[55] *Id.* at 742.

[56] Doc. 24 at 2.

[57] *See, e.g.*, Anderson v. City of McComb, 539 F. App'x 385, 387 (affirming dismissal of a false arrest claim on summary judgment where the attesting officer presented "one version of disputed facts to the magistrate judge").

[58] *See supra* note 41.

16

hole in the qualified immunity shield.[59] Ergo, Plaintiff's *Franks* claim survives Falvey's qualified immunity argument.

### B. Malicious Prosecution Claim

As to Plaintiff's state-law malicious prosecution claim against Falvey, Defendants contend that Plaintiff failed to properly plead that Falvey acted with the requisite intent.[60] Plaintiff counters that his malicious prosecution claim survives for the same reasons his federal false arrest claim survives— that intent may be inferred because Falvey recklessly disregarded the evidence before him and sought a warrant where he lacked probable cause for Plaintiff's arrest.

In Louisiana, a claim for malicious prosecution requires a plaintiff to prove:

> (1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to plaintiff.[61]

To satisfy the malice element, "[t]here must be malice in fact."[62] However, a plaintiff need not plead or prove ill will, because "[m]alice may be inferred from the lack of probable cause or inferred from a finding that the defendant acted

---

[59] *See Hughes*, 100 F.4th at 620 (citing *Winfrey*, 901 F.3d at 494).

[60] Defendants also argue that the Court should decline to exercise supplemental subject matter jurisdiction over Plaintiff's state law claims if his false arrest claim is dismissed. Because Plaintiff has adequately pleaded a federal false arrest claim, this argument is moot. *See* 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

[61] Lemoine v. Wolfe, 168 So. 3d 362, 367 (La. 2015) (quoting Jones v. Soileau, 448 So. 2d 1268, 1271 (La. 1984)).

[62] Miller v. E. Baton Rouge Par. Sheriff's Dep't., 511 So. 2d 446, 453 (La. 1987).

in reckless disregard of the other person's rights."[63] For the same reasons Plaintiff has alleged a viable *Franks* claim based on Falvey's reckless disregard for the truth, the Court holds that Plaintiff's Amended Complaint contains sufficient allegations to support the malice element of his malicious prosecution claim.

### C. *Respondeat Superior* Claim

Defendants also move to dismiss the claim against Sheriff Smith, arguing that Plaintiff attempts to seek double damages for the "same set of facts" underlying his malicious prosecution claim against Falvey. This argument is without merit. Defendants overlook that Plaintiff seeks to hold Sheriff Smith liable for Falvey's conduct based on a *respondeat superior* theory.[64] Malicious prosecution is an intentional tort in Louisiana, and "employers can be vicariously liable for the intentional acts of its employees when those acts are within the course and scope of the tortfeasor's employment."[65] Plaintiff has adequately alleged that Falvey committed the tort of malicious prosecution while acting as one of Sheriff Smith's and the STPSO's employees. Plaintiff's *respondeat superior* claim against Sheriff Smith may therefore proceed.

### D. Immunity Under La. R.S. § 9:2798.1

Defendants next argue that Falvey is entitled to immunity under Louisiana Revised Statutes § 9:2798.1. Section 9:2798.1 provides immunity to public entities, their officers, and their employees from liability based on the

---

[63] *Id.*

[64] Doc. 12 at 11 ("Defendant Smith is responsible or any/all wrongful conduct committed by its employees pursuant to the doctrine of *respondeat superior*.").

[65] Cerdes v. United States, No. 24-2866 c/w No. 25-142, 2025 WL 2444137, at *14 (E.D. La. Aug. 25, 2025) (citation modified) (quoting Carnes v. Wilson, 118 So. 3d 1275, 1277 (La. App. 2 Cir. 2013)).

performance of their "policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties."[66] Defendants cannot invoke this immunity, however, to claims based on Falvey's alleged "acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct."[67] Because the Court holds that Plaintiff has stated claims arising from alleged malicious, intentional, or reckless conduct, Falvey is not entitled to immunity under § 9:2798.1.

### E. Punitive Damages

Defendants further dispute that Plaintiff has stated a claim entitling him for punitive damages. This argument is, again, based on their assertion that, assuming Falvey violated Plaintiff's rights, Falvey did not have the requisite intent to do so. A party may recover damages under 42 U.S.C. § 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."[68] The Court concludes that, for the reasons set forth herein, Plaintiff has adequately alleged reckless indifference to a federally protected right. That is all that is required to pursue punitive damages under § 1983 at this early stage.

### F. Causation of Damages

Moving to Defendants' final argument, Defendants assert that Plaintiff cannot show that their actions are the reason Plaintiff was detained by ICE. Defendants offer an alternative reason for Plaintiff's detention, supported by

---

[66] LA. REV. STAT. § 9:2798.1(B).

[67] *Id.* at (C)(2).

[68] Smith v. Wade, 461 U.S. 30, 56 (1983).

documents the Court has excluded for the purposes of the instant Motion.[69] Because the Court must accept Plaintiff's version of events as true when considering this Motion to Dismiss, the Court finds that Plaintiff has plausibly alleged that his arrest for the hit-and-run charge was the reason ICE detained him.

**CONCLUSION**

For the foregoing reasons, the Motion is **GRANTED IN PART AND DENIED IN PART**.

**IT IS ORDERED** that Plaintiff's *Malley* claim is **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana this 12th day of August, 2026.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

[69] The Court reiterates that Defendants did not present any argument as to why the Court should consider the Immigration Detainer or the copy of Plaintiff's criminal history alongside this Motion.